Good morning, Your Honors. May it please the Court, my name is Scott Graham. On behalf of Ryan Stevenson, and with the Court's permission, I would reserve three minutes for rebuttal time. Ryan Stevenson is serving a 30-year prison sentence for his, based upon his contact, with a person identified in the record, throughout the record, as E.K. He comes before the Court today presenting two arguments. I acknowledge at the outset that there are a couple of hurdles relating to the arguments. In regard to the standard to be applied when a defendant seeks to withdraw a plea of guilty, I understand the factors present some difficulties. In fact, I understand there can be some problems there. I don't want to hide from those problems, I want to take them on head-on and present my best argument to try to get over them in order to obtain relief. The toughest one is probably, right off the bat, the appellate waiver, right? I mean, you agreed that you would waive as long as the sentence was within the guidelines and the Court had properly calculated the guideline range. We can't even take up reasonableness, can we? Well, it's an interesting question, Your Honor, because in this situation, as you're aware, the waiver related to either just general unconstitutional principles, which I'm not alleging here, or, as you pointed out, the question of whether or not an appeal is waived if, in fact, a correct guideline range has been calculated. The difference here is, of course, that Mr. Stevenson moved for a variance alleging that Section 3553A factors indicated that an appropriate sentence would be something less. The waiver is, as I read it, I wasn't involved at that stage, as I read that waiver, it does not deal with the impact of a motion for a variance. I believe that if, in fact, the 3553A factors indicate that a final sentence should be different than is within the guideline range, that, in fact, it would be appropriate for the Court to consider that and to reject the waiver. And the reason is, simply, I couldn't find a case that specifically dealt with a variance motion and its impact on a limited waiver that simply uses the calculation of a guideline range. But the Court's well aware that the use of the guideline range is a starting point only. Let me ask you a question here. I just want to be sure I understand the story, the facts here. In this case, there was a girl who was 16 or 17 years old in that neighborhood, and she sent to the defendant here a group of nude photographs. And then she came from where, Oregon, was it, somewhere? Oregon, to his, where he lives, to meet him and to live with him, or at least, in part, live with him and have sexual relations with him. Correct, Your Honor. And he enters a plea agreement here in order to avoid the possibility of life imprisonment. Is that part of the reason he did this? Well, that But he ends up getting 30 years out of this, right? Correct, Your Honor. Actually, what happened was, and I would note, the only thing I would add to what you've said is correct, EK, the young woman, did not travel to Michigan and engage in any sexual relations with Mr. Stevenson until after she was 18 years old. I realize there was contact. They never had any physical contact. Correct. It was all virtual before that, but it did go back. It did go back in time, no question about it. For three years. It did. And there's no question but that Mr. Stevenson took a look at Michigan law, determined what he believed, I'll use the term age of consent would be in Michigan, determined that that age was 16, began to have his contact with her. And there's a question about whether she was almost 16 or had turned 16 or whether he was aware. But he makes that determination, but erroneously misses the fact that he may well have been able, in Michigan, to have this sexual contact, but they couldn't take sexually explicit photos and transmit them. I mean, guilt is all related to child pornography, not to engaging in sex acts with a minor, right? We're talking about what he pled guilty to was receipt and possession of child pornography and enticing a minor, right? And that's really all part of the same relationship that went to the two of them beginning to have these, send these photos back and forth. And her, I just wanted to make the point, he didn't touch her until she was 18. Right. But I don't know if that's relevant to the charges he pled guilty to. Well, maybe not for the purpose of the charge, but I don't know if it has relevance for the statute say that he pled guilty to exactly. He pled guilty to enticing a minor to engage in sexually explicit conduct, which would be taking these photos that would show, among other things, her genitalia and transmitting those in interstate commerce. And he transmitted images back to her. So the entire wrong here, the criminal acts, have only to do with the taking of photographs. That's correct, Your Honor. Taking of photographs and transmitting them. Back and forth between them? Yes. Yes. And I gather that, I mean, he was given two different plea agreement options, right? Sure. And one would have a sentencing range of between 15 and 30 years. Right. And the other would be 10 years to life. Right. And he switched on the morning of his guilty plea, right? My understanding is that he switched. He was... He didn't like the 15 minimum. He liked the 10 minimum, although the downside of the 10 minimum was the upside was life. Correct. Absolutely correct. Absolutely correct. But I mean... And he chose the one in order to avoid the possibility of life? Is that... No, he ended up choosing the one to avoid the 15. He ended up choosing the one to avoid the 15. But I mean, you're not claiming he was incompetent to do that, was he? No. No. I'm not claiming that he was incompetent. So what is your essence of your claim? Well, as it relates to the guilty plea, my point is that, again, understanding what the factors are to be applied, the four prongs to be applied in this court's consideration of what the district court did, one thing that's really troubling here is there's a question about timing. And I know timing is always a very important factor. How long do you wait before you ask to withdraw the guilty plea? Is this truly a matter of buyer's remorse because at the end of the road, a defendant finds out that there's going to be real trouble here, there's going to be an extremely high sentence? The thing that's unusual here is his attorney files a motion at some point in time, and in the motion makes the representation that my client's saying that he wanted to withdraw his plea from the very beginning. Now, this motion doesn't get filed for quite a while. Three months or more. Right, until the initial draft of the pre-sentence report is filed. But the motion itself is never really dealt with factually because there's an allegation in there by the attorney saying, my client told me that he was unhappy with the plea from the beginning. Okay, so that's an ineffective assistance of counsel claim. But until the court knows that he wants to withdraw his plea, it's a little hard for the ‑‑ we don't ordinarily say that, you know, well, if wishes were horses, you know, he was thinking about it. But until he actually did something about it, the time doesn't start to run, does it? I agree with you, Your Honor. I agree with you, except the difference here is, as far as I'm concerned, the difference is that the court in denying the motion essentially accepted as true that he didn't do anything until ‑‑ Well, he didn't as far as the court was aware. Except there's an allegation that's been made that the defendant is saying something different and that allegation was never resolved, even though that allegation was before the court. Once the court made its ruling, I agree with you, there's no way that the district court could have known anything until those papers were filed. But once those papers were filed and it didn't say, Mr. Stevenson now wishes to withdraw his guilty plea because now he's upset, when the papers say that the defendant has been saying, or the defendant is saying that he wanted to withdraw it before, from the beginning, then the question is, can the court take it up then or is it something that maybe is a 2255 issue? I guess is the way I look at it. Yes, he and his lawyer thought in the beginning that he didn't have any defense in a trial of the case. Is that ‑‑ and so he went along with it and then when he realized that this sentence is 30 years for this, that he would then try to withdraw the guilty plea, is that kind of what happened? Well, it doesn't read that way. It could well be that that's what happened. But the papers don't read it that way. The papers read as if Mr. Stevenson is saying that he wanted to withdraw the plea from the beginning because he did not coerce EK to do anything. I didn't think it was from the beginning. I thought the record talks about that on February 4 of 2015, he moves from one jail to the other. And at that point, he was supposedly trying to get in touch with his lawyer and couldn't do it until weeks later and it wasn't until March that the motion was actually filed to withdraw the plea. And I'm sorry about using the term from the beginning, but very early on as opposed to ‑‑ Well, but very early on, I mean, the guilty plea was in December of 2014, right? So even from that time of the guilty plea to February 4 when he switched jails, that's six weeks. We've got cases that say that even five weeks is too late, that even 30 days is the dividing line between what's reasonable and unreasonable. I understand, Your Honor. What can you do about that time gap? Well, in regard to that time gap, I don't know that there's anything in the record at this stage that would undermine that time period or allow me to whittle away. That's a problem for you there, I'd say. Let me ask you, you used the word coercion. Is coercion an element of the offense here? Coercion, it is certainly arguable that merely asking EK to send photos, merely using the words, would you send me a photo, is coercion. Well, even if it isn't, the statute prohibits coercing, enticing, persuading, or attempting to persuade. And now he's saying I didn't coerce and I didn't entice, but he's not saying I didn't persuade and I didn't attempt to persuade. The position that he took when he sought to withdraw the plea was he didn't, his position was that he didn't do anything to try to overcome her will, whether that was an adequate defense as a matter of law. That's what he would try to claim if he could have a trial, that's what you're saying. He would try to show that she was as much into this as he was and he wasn't coercing, persuading, et cetera, et cetera. That's correct. That was his basic idea. If you got a trial, you would be defending it on the basis of the language that Judge Batchelor just read not being proved. That's correct, Your Honor. From the papers, that's what we have. I see my time's up. Thank you. Good morning, Your Honors. May it please the Court, my name is Tessa Hess-Miller. I represent the United States in this case, as I did district court level in the Western District of Michigan. There are two issues in this case, the plea withdrawal and the sentence. I'll start with the plea withdrawal here. Mr. Stevenson has some philosophical disagreements with whether his conduct constitutes coercion. As Your Honor has already noted, inducing, enticing, or even persuading a child still counts. The government points... He would defend the case on that basis, he says, if he had a trial. Apparently, Your Honor, that he did not, on several bases, that he did not coerce or force her into it because she was a willing participant and because she was doing this with other people at other times. But the government would present at trial, as it has here in its appeal and in its response to the motion to withdraw the plea, to Mr. Stevenson's email to EK in May 2012, which he admitted at the plea hearing was his, and he admitted that EK was 16 at that time. And this was after lengthy discussions between them about things that indicated that she was a minor, things like taking the ACT, taking driver's training, not being able to text during class, having a class from 8 a.m. to 2.30 p.m., trying out for the lacrosse team, her 13-year-old brother, etc., etc. That all happened in February 2012 over email. In May 2012, Mr. Stevenson sent an email to EK with a Word document attached entitled, EK's Slave Assignment, in which he said to her, a page and a half of instructions, which included things like, you are to take a minimum of eight photos for me daily. More are encouraged and will be rewarded, my little camera slut. You're required to come for master at least two times daily. You must tease yourself. At least one such occurrence should be recorded on video. You're saying he'd have a hard time with the jury on the basis of this and other evidence. They may have some evidence on their side, too. We don't know what the jury—you never know what a jury would do in this situation. Correct, Your Honor. We don't know. The question is whether, in light of the circumstances and a 30-year sentence, which is a little long, we ought to look at this and say, well, let's give the guy a trial and see what happens. Well, that's certainly the two main questions, Your Honor, is should he be allowed to withdraw his guilty plea in order to either go to trial or accept the alternate plea offer. We're not sure what Mr. Stevenson's position is. It hasn't been articulated. If he wants a trial or he just wishes that he had taken the other plea offer when it was available. So we're not sure if he wants to go to trial. This evidence would be persuasive to a jury, not just because it's egregious and shocking to the conscience, but because it meets the legal definition of persuading. Mr. Stevenson was certainly persuading— It's up to the jury, isn't it? Not— They may feel sorry for the guy. Was he got a family of children and all of that? Certainly, Your Honor. I don't think the question here is what would a jury have done. It's are the facts that Mr. Stevenson admitted to at the plea sufficient to meet the legal elements for the crime of coercion and enticement, which they are. And so I'm mentioning this email that Mr. Stevenson sent as— It was a factual basis. As the factual basis, Your Honor.  That just legally speaking, the facts that he admitted to, including this email, which he agreed was his and that he sent while she was a minor, they just factually meet the definition of the legal elements for the crime. One of the things that troubles me about this, really does trouble me a lot, 30 years is, to me, an incredible sentence. And I don't know where that—it's obviously in the guidelines and so on, but doesn't that trouble you, 30 years? No, Your Honor. It doesn't trouble me. It's not out of line with other child pornography production cases. I'm talking about this case. 30 years? No, Your Honor. There were some really egregious facts in this case. This victim was a 15-year-old girl who was at home. She was using the computer in her own bedroom. According to the letter that her mother sent, the impact of knowing that a grown man through the daughter's computer was invading their home for two and a half years, unbeknownst to the parents, was quote-unquote devastating to the mother. It really goes against the adage of lock up your daughters. I mean, this mother thought she had locked up her daughter. Essentially, she's in the room, she's at home, she's in the safety of the home, and Mr. Stevenson is using the internet to get into that child's bedroom and persuading her to take child pornography and send it to him. Thousands of images which she sent to him. Was there evidence of her doing this otherwise with others? There was evidence. Was it a habit or what? Yes, Your Honor. There was evidence in the pre-sentence report that E.K., the victim in this case, had been doing this before with other people. The consent of the minor is not a defense.  It's wayward minors, it's minors with poor judgment, and it's minors, even promiscuous minors, who are susceptible to victimization of these types of online crimes. What about the 16-year-old rules? I'm sorry, Your Honor? In Michigan, she was apparently 16 or a little older during this period of time. She was 15 when it started in February 2012, and then she turned 16 in April 2012, and then it continued until she turned 18 and came to live in Michigan. The age of consent for having sexual intercourse in Michigan is 16. The age of consent under Michigan state law for producing child pornography, or producing pornography, is 18. So as the defendant has recognized, we're not even talking about hands-on physical contact. We're not talking about the sexual intercourse world. We're talking about the pornography world. And in both state and federal law, it's illegal for an adult to take, possess, or receive pornographic images of a person under the age of 18. As it turns out in terms of the age of consent of sexual intercourse, the age of consent in Oregon is 18 anyway. So, I mean, that just further reduces the reasonableness of giving Mr. Stevenson some sort of a break for thinking that the age of consent for sexual intercourse was 16. The court also heard evidence that Stevenson had done this with his own wife when she was 13, that he found her online, that he met her online, that he talked her into meeting through the Internet, that they met, that they had sex when he was 19, she was 13. How many children do they have? Two, Your Honor, two little girls. He took photographs of the wife, which were on CDs, which the FBI had reviewed and confirmed with the wife that they were her. The data inside those photographs indicated that the wife was 13, then she was 15. There are allegations made by the wife to the FBI as documented in the pre-sentence. Part of why he should go to jail for 30 years? Part of it, certainly, Your Honor. It was on the record at sentencing that also the wife said that this happened to her other 13-year-old friend who Mr. Stevenson also had sex with when she was a minor and who engaged in sexual acts that that other minor described as increasingly sick and twisted or sick and perverted. The wife described this lifestyle, as Mr. Stevenson kept referring it to. She described this lifestyle as involving bondage and torture that she did not even want to explain to the FBI. She mentioned sleep deprivation. She mentioned having to sleep in the same bed as E.K. when E.K. moved to their home in Michigan, having to watch her husband have sex with E.K. and being relegated to the basement if she complained. So these are all facts that were in the pre-sentence report that the court considered. The court also considered during the sentencing procedure the progression from E.K. just casually sending images to maybe other people, sending them to Mr. Stevenson, to them forming a bond. And eventually during the course of this process, while E.K. was still a minor, her e-mail address changed to masterryansproperty at gmail.com. So this was an exclusive relationship as it went on. She put that herself as her e-mail address? She did, Your Honor. So she started e-mailing him during the second year of their relationship online from her e-mail address masterryansproperty at gmail.com, and she sent him images of herself naked with Master Ryan written on her pubic area and other things indicating that she was not just doing this with anybody, that she was doing this because she was committed to him. After the two of them started having sexual relations? Before, Your Honor. Before. Correct, Your Honor, while she was still a minor in Oregon. What about the appellate waiver issue now? Your opposing counsel says, well, that there's 3553A factors or some reason maybe to get around the waiver. What is your response to that? That does not get around the waiver, Your Honor. The appellate waiver is very clear and simple and prohibits appeal for any reasons other than the reasons already noted by Your Honor. Well, I'd like to just suggest strictly from the perspective of the language that it's not clear, and so if this is one that you use all the time, you might think about actually making it clear because what that waiver says is the defendant understands that the law affords the defendant the right to appeal the sentence imposed. Now that's certainly clear. I have no problem with that. Acknowledging this, the defendant knowingly waives the right to appeal the sentence as determined by the court at sentencing. That's pretty clear. But then you go on to say, and the manner in which the sentence was determined on the grounds set forth in 18 U.S.C. section 3742, and of course those aren't, that's not the manner in which it was determined. You might maybe even, I mean, there are a couple things you could do to fix that, but I read that about four times and tried to figure out exactly what do you mean by that waiver. Your Honor, the office has actually changed the waiver. Oh, good. I agree with Your Honor that the paragraph is written, it's wordy, it's cumbersome. And it's not clear. And I was only referring to the fact that there are two appellate rights that he retained, which were to appeal a sentence that exceeds the statutory maximum of the count of conviction or is based on an unconstitutional factor, or the right to appeal objections that were preserved at sentencing that the court incorrectly determined in the final guideline range. So I should rephrase it, Your Honor, when you boil it down, there are those two appellate rights which were clear to the defendant in the briefing and were already mentioned by the court earlier. As for whether this request for a motion for variance affects it, the answer is no. In paragraph 8 of the plea agreement, which is on page ID 8080, it states that the defendant further understands that the court shall make the final determination of the guideline range that applies in this case and may impose a sentence within, above, or below the guideline range, subject to the statutory minimum and maximum penalties. The defendant further understands that disagreement with the guideline range or sentence shall not constitute a basis for withdrawal of the plea. So the defendant understood in the course of the plea agreement that the guidelines are what they are, parties can make their arguments, the court may vary upwards or downwards, but that the right to appeal pertains to whether the court incorrectly determined the guideline range, not whether the court followed the guideline range. This sentence was within the guidelines. The defendant did make a few, there were two objections to the guidelines as calculated, one of which was resolved in favor of the defendant, one of which was resolved in favor of the government. The one in favor of the government was that this crime did involve use of a computer, which is pretty obvious. I didn't want to say it was clear, Your Honor, since I just made that mistake earlier, but it was pretty obvious that it used a computer. So the parties were asked at the end were there any objections to the sentence. Both parties said no. There were no objections to the guideline range after it was calculated other than the one objection to use of a computer, which is not an issue here. So the sentence that was given was a within-guidelines sentence, was presumptively reasonable. The court did consider the 3553A factors. The court said at the beginning of the sentence it recognized that it had a lot of leeway, that it was not bound by the guidelines, certainly did not abuse its discretion in imposing a within-guidelines sentence. One other, as long as we're beating up on you for whether things are clear or not. Go ahead, Your Honor. There was one other thing that jumped out at me. I don't think it makes any difference because I know we do have case law in this circuit that sort of addresses it. But at the plea hearing, and I think you were the AAUSA at the plea hearing, you correctly read the superseding felony information as being in the conjunctive, but the statute and the plea agreement both are in the disjunctive. Yes, Your Honor. Does it make any difference? That's the way that we charge it in our district. We always say and when the... That would sort of seem to most people to mean that if you don't show all four, then you're not going to win. Whereas if the statute is in the conjunctive and you charge it in the conjunctive, any of them are going to work in the government's favor. So I was curious as to why you do that. There is an office policy to do that, Your Honor, and I'm not exactly sure why, but we always do it that way. But the plea agreement, as you noted, and the colloquy at the plea indicated that it was or, as does the statute. The fact that you've always done it that way doesn't mean you should continue doing it. I agree, Your Honor. I will take that back to the office. Your office might think about hiring an English teacher just for a consultant. I'll bring that back to the office, Your Honors. Thank you. Thank you. In regards to the question of the motion for a variance and its impact on the guidelines, in this situation, this is not a case where simply 3553A factors were discussed. There was a written motion for a variance filed. At the conclusion of the guideline calculation, the district court was asked to take up the 3553A motion as a separate matter and determine whether or not there should be consideration given and then a different sentence determined. The court denied the motion, rejected the request, disagreed, denied the motion. Then we move to the question where the court asks, are there objections to the guideline range? Well, no. The way they were calculated before was correct, but the 3553A motion was just denied. A written motion was just denied. I don't think anything else has to be said at that point to keep open that issue. The question becomes, have you forever and always waived a 3553A variance motion if you enter into a waiver that relates to the original guideline calculation? I don't think that makes any sense. Do you have any case that directly supports your position? I don't have a case either way on that. It's a unique situation to me, but I would say that, to me, it ties in in terms of common sense with the fact, again, that it's so well established that the calculation of the guideline range is only the beginning of the sentencing process. But your waiver included the manner in which the sentence was calculated, which would certainly include filing a motion for a variance and having the court decline to take it up. I'm not sure that it's so clear from my perspective. Again, it's easy for me to say I didn't negotiate the plea agreement, but I'm just not sure it's quite as clear. I guess that's my position to the court. In regard to the circumstances about how bad the overall conduct was, the one thing that's so important to me is this. I believe very strongly that the record shows this. The court imposed this incredibly harsh sentence, not because of these other events that have been briefly discussed here, but because Mr. Stevenson was engaged in a master-slave relationship, I have to accept that, with someone that he brought to his home and someone who he had live at his home with his wife and two children. That and that alone was so shocking to the court, even though at that time the conduct was completely legal. But it was so shocking to the court that it caused an incredibly harsh sentence to be imposed. I don't think that's right. Mr. Judge didn't like the fact that 99.99% of people in Michigan don't like what he did, right? He was certainly in the group that didn't care at all for what Mr. Stevenson did and punished him, I think, so harshly because of that, and I think it was unfair. We note, counsel, that you are a CJA-appointed counsel, and we very much appreciate your work. Without the contribution that you all make, it would be hard to make the whole system work, so thank you very much. And with that, there being nothing further this morning, you may adjourn the court.